UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
_____

In re:
    Thomas G. Cinney,                                Case No. 20-10139
                                                                   Chapter 7
                                          Debtor.
_____

    Mountain Aire Management, LLC,
                                           Plaintiff(s),
       v.
                                                                 Adv. No. 20-90008
    Thomas G. Cinney,
                                           Defendant(s).
_____

APPEARANCES:

Nolan Heller Kauffman LLP                                      Brian Deinhart, Esq.
*Attorneys for Plaintiff*
80 State Street, 11th Floor
Albany, NY 12207

Matte & Nenninger, PC                                             Christopher S. Nenninger, Esq.
*Attorneys for Debtor*
444 Glen Street
Glens Falls, NY 12801

Robert E. Littlefield, Jr., United States Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

       Currently before the Court is the adversary complaint (the "Complaint") filed by

Mountain Aire Management, LLC ("Mountain Aire" or the "Plaintiff") against Thomas G.

Cinney ("Cinney" or the "Debtor") to have a certain judgment debt deemed non-dischargeable

pursuant to Section 523(a)(4) and/or Section 523(a)(6).  The Court has jurisdiction over this core

matter pursuant to 28 U.S.C. §§ 157(a), (b)(1), (b)(2)(A) and 1334(b).  For the reasons that

1

follow, the Court finds that the Plaintiff did not sustain its burden of proof by a preponderance of the evidence. Accordingly, the Complaint is dismissed.

## FACTS

1. In 2010, Cinney, a seasonal truck driver, approached Jeffrey Tennent ("Tennent")[1] about selling the Debtor's home (the "Home") located at 10 Penny Candy Lane, Bolton Landing, New York to Mountain Aire. (BKR Doc. 1,[2] Main Case No. 20-10139; ¶ 7, Apr. 23, 2019 State Court Decision and Judgment, Ex. A, ECF No. 1).

2. Tennent and Cinney were neighbors and longtime friends. (¶ 6, Apr. 23, 2019 State Court Decision and Judgment, Ex. A, ECF No. 1).

3. The Debtor informed Tennent that a third-party was willing to pay $250,000.00 to purchase the Home. *Id.* at ¶ 8.

4. Cinney indicated to Tennent that he sought a source of income that would allow him to focus on his health issues without leaving his Home. *Id.* at ¶ 9.

5. Mountain Aire paid Cinney $20,000.00 (the "Payments") prior to the parties entering into a written agreement. *Id.* at ¶ 10.

6. On February 5, 2011, the parties entered into a contract for the sale of the Home (the "Sale Contract"). *Id.* at ¶ 11.

7. Also on February 5, 2011, the parties entered into an "Exclusive Option Agreement for Purchase of Real Property" (the "Option Agreement"). *Id.* at ¶ 12.

8. Tennent prepared the Sale Contract and the Option Agreement. (Nov. 5, 2018 State Court Trial Transcript, Ex. F, Plaintiff's Pretrial Statement, ECF No. 33).

---

[1] This Memorandum-Decision and Order refers to Tennent in his capacity as Managing Member of Mountain Aire.

[2] Docket entries in the Main Case are cited as "BKR Doc. ___" and case filings in the Adversary Proceeding are referenced as "ECF No.____."

9. The Option Agreement called for a purchase price of $230,000.00[3] including a down payment of $3,750.00 and option fee payments. (¶ 14, Apr. 23, 2019 State Court Decision and Judgment, Ex. A, ECF No. 1).

10. The option fee payments (the "Funds") total $30,000.00. *Id.*

11. Paragraph (5)(e) of the Option Agreement states in relevant part:

> Default by Seller; Remedies by Purchaser. In the event Seller fails to close the sale or produce clear title to the [subject premises] pursuant to the terms and provisions of this Agreement and/or under the Contract, Purchaser shall be entitled to, all Option Fee's [sic] or any monies paid to date being reimbursed by the Seller to the Purchaser plus a Twenty Thousand Dollar ($20,000.00) penalty. The Purchaser shall have the right to sue for specific performance of the this [sic] agreement and or the real estate purchase and sale contract, or **terminate such Contract and sue for money damages**.

*Id.* at ¶ 16 (emphasis added).

12. The Plaintiff paid all the Funds (i.e., $30,000.00) to the Debtor. *Id.* at ¶ 20.

13. The Option Agreement did not require that any money be held in an escrow or a separate account. (Tr. 20:24-25; 21:1-2, ECF No. 41).

14. The Sale Contract and the Option Agreement called for a closing date on or about May 1, 2013. (¶ 19, Apr. 23, 2019 State Court Decision and Judgment, Ex. A, ECF No. 1).

15. On August 1, 2013, John D. Wright, Esq. ("Attorney Wright"), real estate counsel for the Debtor, wrote a letter to Michael Stafford, Esq. ("Attorney Stafford"), the Plaintiff's attorney, stating that time was of the essence for the sale of the Home and that the proposed closing was to be held on August 6, 2013. *Id.* at ¶ 31.

---

[3] Although the Option Agreement called for a purchase price of the Home for $230,000.00, Mountain Aire previously had paid Cinney $20,000.00. If the sale had been consummated, $250,000.00 would have changed hands. *See* Fact 5.

16. On August 5, 2013, Attorney Stafford wrote to Attorney Wright in relevant part, "My client elects to terminate the contract . . . ." (Nov. 26, 2014 Amended State Court Decision and Order, Ex. A, ECF No. 16).

17. On October 2, 2013, the Plaintiff filed an action against the Debtor in the Supreme Court of Warren County (the "State Court") alleging a breach of contract and seeking $50,000.00 for monetary damages. *Id.*

18. The State Court found that the Plaintiff terminated the Option Agreement. *Id.*

19. The Plaintiff elected, pursuant to Paragraph 5(e) of the Option Agreement,[4] to sue for money damages. *Id.*

20. The Debtor eventually sold the Home to the third-party on December 29, 2014. (Apr. 23, 2019 State Court Decision and Judgment, Ex. A, ECF No. 1).

21. On April 23, 2019, the State Court entered its decision in favor of Mountain Aire based on the Debtor's breach of contract "as he was unable to convey clear title nor give [P]laintiff possession of the property." *Id.*

22. The State Court also found a constructive trust[5] between Cinney and Tennent. *Id.*

---

[4] *See* Fact 11.

[5] Although the State Court created a constructive trust between Cinney and Tennent, the Court notes that Tennent was not a party to the State Court action. Nevertheless, the constructive trust as found by the State Court is not applicable to Section 523(a)(4). *See In re Marchiando*, 13 F.3d 1111, 1116 (7th Cir. 1994) ("If . . . a fiduciary is anyone whom a state calls a fiduciary . . . states will have it in their power to deny a fresh start to their debtors by declaring all contractual relations fiduciary."); *see also Yankowitz Law Firm v. Tashlitsky (In re Tashlitsky)*, 492 B.R. 640, 647 (Bankr. E.D.N.Y. 2013) ("Absent the characteristics of a formal trust relationship, or a situation where the debtor holds a 'position of ascendancy' . . . courts have declined to find a fiduciary relationship under § 523(a)(4) even when a written agreement purports to create a trust relationship."). Additionally, "[c]onstructive or implied trusts, or any trust where the existence of the trust is created merely on the basis of wrongful conduct (a trust ex maleficio) do not create a fiduciary relationship." *Zohlman v. Zoldan*, 226 B.R. 767, 772 (S.D.N.Y. 1998). "Thus, a fiduciary relationship under § 523(a)(4) does not arise based upon an equitable trust, such as a constructive trust." *In re Tashlitsky*, 492 B.R. at 645.

23. On May 28, 2019, the State Court entered the total judgment of $76,925.00 to the Plaintiff. (May 28, 2019 State Court Total Judgment, Ex. B, ECF No. 1).

24. The total included (i) a $20,000.00 judgment to the Plaintiff based on a constructive trust and Cinney's unjust enrichment, (ii) $30,000.00 for Debtor's breach of the Option Agreement, (iii) interest from August 1, 2013 to May 1, 2019, (iv) costs by N.Y. C.P.L.R. § 8201 and (v) disbursements. (Apr. 23, 2019 State Court Decision and Judgment, Ex. A and May 28, 2019 State Court Total Judgment, Ex. B, ECF No. 1).

25. Cinney filed his chapter 7 bankruptcy petition on January 30, 2020. (BKR Doc. 1, Main Case No. 20-10139).

26. Cinney listed Mountain Aire as a creditor in Schedule F of his petition. *Id.*

27. On April 15, 2020, Mountain Aire commenced this adversary proceeding against the Debtor. (ECF No. 1).

28. On August 4, 2020, the Plaintiff filed a motion for summary judgment. (ECF No. 12).

29. On August 19, 2020, the Debtor submitted a response, a statement and a memorandum of law in opposition to Mountain Aire's summary judgment motion. (ECF Nos. 16, 17 and 18).

30. A supporting memorandum of law was filed by the Debtor on August 24, 2020. (ECF No. 20).

31. On August 26, 2020, the Court held a hearing on Mountain Aire's motion for summary judgment and entered an order denying the motion on August 31, 2020. (ECF Nos. 22 and 23).

32. On January 8, 2021, the Court issued a scheduling order for trial. (ECF No. 29).

33. The Court held a trial on January 28, 2021. (ECF No. 38).

34. Three witnesses testified at trial: (i) Tennent, (ii) Cinney and (iii) Attorney Wright. (ECF No. 41).

35. On March 25, 2021, the Debtor submitted his post-trial brief. (ECF No. 43).

36. Mountain Aire filed its post-trial brief (the "Post-trial Brief") on March 26, 2021. (ECF No. 44).

37. On April 2, 2021, the Plaintiff submitted its reply to the Debtor's post-trial brief (the "Reply"). (ECF No. 45).

## ARGUMENTS

The Plaintiff seeks a finding that the debt owed to Mountain Aire is non-dischargeable pursuant to Section 523(a)(4) and/or Section 523(a)(6).

Initially, the Plaintiff focuses its Section 523(a)(4) embezzlement cause of action on the allegation that Cinney appropriated the Payments and the Funds. The Complaint states in relevant part:

> 25. Plaintiff entrusted the [Payments] and [Funds] to Defendant as deposits for Plaintiff's purchase of Defendant's [Home].
> 26. Defendant willfully and knowingly appropriated Plaintiff's property for his personal use, without Plaintiff's consent, and with intent to defraud Plaintiff.
> 27. Defendant knowingly harmed Plaintiff by appropriating these funds while intentionally failing to close on the sale of the [Home].
> 28. Accordingly, Defendant embezzled Plaintiff's property within the meaning of 11 U.S.C. § 523(a)(4).

ECF No. 1.

In its Post-trial Brief and Reply, Mountain Aire appears to abandon its original argument and purports to offer a different theory that Cinney appropriated the option to purchase the Debtor's Home without its consent and with the intent to defraud the Plaintiff. The Post-trial Brief states in relevant part, "Here, Mountain Aire had a property interest in its option to purchase the [Home]. . . . Plaintiff's option was secured by $50,000.00 in deposit funds." ECF No. 44. Mountain Aire's Reply provides in part:

6

> [U]nder the terms of the Sale Agreement, Mountain Aire obtained an option to purchase the [Home]. It is well established law that an option to purchase property is an interest in that property . . . . Therefore, by preventing Mountain Aire from exercising its option, Cinney misappropriated that interest, which was then under Cinney's control.

ECF No. 45.

Alternatively, Mountain Aire contends that Cinney converted the Payments and the Funds. As a result of the conversion, the Plaintiff argues that the debt to Mountain Aire is exempt from discharge because it is a willful and malicious injury to the Plaintiff pursuant to Section 523(a)(6).

In response, Cinney counters that he did not take the Plaintiff's property. The Debtor maintains that the Option Agreement had no restriction on how he spent the Funds. According to the Debtor, Tennent knew that Cinney would spend the money on health and living costs. As such, the Debtor posits that the Plaintiff's allegations do not rise to the level required to exempt the debt from discharge pursuant to Section 523(a)(4). Also, the Debtor asserts that Section 523(a)(6) does not apply to a standard breach of contract allegation.

## DISCUSSION

This case exemplifies the maxim "no good deed goes unpunished." For better or worse, Tennent structured a plan to help his friend Cinney. As a "reward" for Tennent's act of friendship and kindness, Cinney retained $50,000.00 from the Plaintiff, breached the agreement and then sold the Home to the third-party.

However, under a legal analysis, "[t]he courts have repeatedly stressed that the 523(a) exceptions to discharge must be strictly construed in favor of the debtor in order to comport with the 'fresh start' policy underlying the Bankruptcy Code." *Zohlman v. Zoldan*, 226 B.R. 767, 771 (S.D.N.Y. 1998) (citations omitted). In Section 523(a) exceptions to discharge, the "[p]laintiff

7

bears the burden of proving its debt is nondischargeable by a preponderance of the evidence." *Bd. of Tr., Adirondack Carpenters Pension Fund v. Parker (In re Parker)*, 388 B.R. 11, 18 (Bankr. N.D.N.Y. 2008) (citing *Grogan v. Garner*, 498 U.S. 279, 291 (1991)).

**I. Section 523(a)(4)**

Section 523(a)(4) states in relevant part, "(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt— . . . (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. 523(a)(4).

*A. Embezzlement*

"Embezzlement under 11 U.S.C. § 523(a)(4) is to be determined under federal common law, which defines it as the fraudulent appropriation of money by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Gore v. Kressner (In re Kressner)*, 155 B.R. 68, 74 (Bankr. S.D.N.Y. 1993) (citation omitted). "To prove embezzlement, the creditor must demonstrate both that the debtor appropriated funds for his own benefit, and did so with fraudulent intent." *Farina v. Balzano (In re Balzano)*, 127 B.R. 524, 533 (Bankr. E.D.N.Y. 1991) (citations omitted). "Absent intent to defraud, a debtor's appropriation of funds does not rise to the level of embezzlement." *Id.* (citations omitted). "But, even with respect to embezzlement, where a creditor . . . is neither the owner of nor in possession of the assets, there can be no embezzlement, for no person can embezzle from himself." *Chem. Bank v. Marcou (In re Marcou)*, 209 B.R. 287, 293 (Bankr. E.D.N.Y. 1997) (citation omitted and internal quotation marks omitted).

Here, the record plainly invalidates the Plaintiff's embezzlement allegation. Mountain Aire gave the Payments to Cinney without an agreement. ¶ 10, Apr. 23, 2019 State Court Decision and Judgment, Ex. A, ECF No. 1. In addition, the Sale Contract and the Option

8

Agreement between the parties did not mandate that Cinney hold the Funds in escrow or a separate account. *See* Tr. 20:24-25; 21:1-2, ECF No. 41. Critically, Tennent acknowledges that "[t]here wasn't any restriction . . . written in the agreement." Tr. 21:9-11, ECF No. 41. Thus, the Plaintiff's embezzlement claim cannot stand because no fraudulent appropriation of the property occurred. The Plaintiff knew that the Debtor would spend the Payments and the Funds.

Second, the Plaintiff does not prove the Debtor's intent to defraud. Although the Plaintiff anchors its embezzlement allegation on *Majid v. Fiano (In re Fiano)*, Case No. 15-21410, Ch. 7, Adv. Pro. No. 15-02054, 2017 Bankr. LEXIS 887, at *16-17 (Bankr. D. Conn. Mar. 31, 2017), the facts and circumstances in this matter are not on par with the ones in *Fiano*. Notably, the debtor in *Fiano* intended to refund money, promised to pay the creditor in the future and wrote post-dated checks to the creditor. *Id.* In contrast, the pleadings and trial transcript do not suggest that Cinney promised to return any money to the Plaintiff.

Further, Mountain Aire does not identify any evidence or testimony that resembles the debtor's acts in *Fiano*. Here, Tennent completely understood how the Debtor planned to use the Payments and the Funds. At trial, he conceded that Cinney had health issues and used the money for health and living expenses. Tr. 20:20-21, ECF No. 41. Moreover, Tennent testified, "I knew [Cinney] was spending at least some" of the Payments and the Funds. Tr. 21:5-6, ECF No. 41. Thus, the Court finds that Cinney had no intent to defraud Mountain Aire. *See In re Balzano*, 127 B.R. at 533 (finding no fraudulent intent when the debtor "had reasonable grounds to believe he had a right to so use the money").

Lastly, under Mountain Aire's new theory, the Plaintiff's embezzlement cause of action still fails. "In the absence of controlling federal law, courts have generally looked to the definition of 'property' under state law when construing § 523(a)." *Yankowitz Law Firm v.*

9

*Tashlitsky (In re Tashlitsky)*, 492 B.R. 640, 647 (Bankr. E.D.N.Y. 2013) (collecting cases). "Applying applicable state law, courts have generally determined that a corporate opportunity does not constitute 'property' for purposes of § 523(a) exceptions." *Id.* at 648 (collecting cases). The *Tashlitsky* case is illustrative because that court applied New York conversion law to analyze a Section 523(a)(4) exception to discharge. *Id.* ("Because New York law has clearly defined the limits of a cause of action for conversion as applied to intangible property, the definition of 'property' for the purposes of § 523(a)(4) cannot be similarly extended in this case.").[6] Further, the Plaintiff offers no case law or guidance to support its argument. Although Mountain Aire contends that its business opportunity constitutes real property for its embezzlement cause of action, this Court declines to expand the meaning of property to include business opportunities when analyzing Section 523(a) exceptions to discharge.

Additionally, the Plaintiff's alternative theory diverges from its Complaint and borders on unfairness and prejudice to the Debtor. Nevertheless, the Court addresses it in the interest of completeness. *See Advanced Recovery Sys. v. Clemons (In re Clemons)*, Case No. 1103184, Adv. No. 1100127, 2013 Bankr. LEXIS 875, at *23 (Bankr. S.D. Miss. Mar. 6, 2013) (noting "it would be unfairly prejudicial to the Debtor to allow the amendment after the close of discovery,

---

[6] The *Tashlitsky* court noted:
> Historically, New York has recognized the general principle that 'the subject matter of a conversion action must constitute identifiable tangible personal property. Thus, whether the property claimed to have been converted is real property . . . or an interest or expectancy in a business opportunity . . . conversion will not lie.'

492 B.R. at 649 (quoting *Roemer and Featherstonhaugh, P.C. v. Featherstonhaugh*, 267 A.D.2d 697, 699 N.Y.S.2d 603 (N.Y. App. Div. 1999)).

"The extent to which intangible property may be considered 'property' subject to conversion was recently clarified by the New York Court of Appeals in *Thyroff v. Nationwide Mutual Insurance Company* . . . ." *Id.* (citation omitted). "Cases decided by courts applying New York law after *Thyroff* have adhered to the view that business opportunities cannot be converted." *Id.* (citation omitted). "A right to the benefits under a contract is not the type of intangible property interest which *Thyroff* contemplated. . . . These are not property interests protected by the law of conversion." *Nelly de Vuyst, USA, Inc. v. Europe Cosmetiques, Inc.*, No. 11 CV 1491, 2012 U.S. Dist. LEXIS 12981, at *22-23 (S.D.N.Y. Jan. 6, 2012).

after the conclusion of three pretrial conferences, and then finally, after the conclusion of the trial").

Based upon New York property law and the *Tashlitsky* decision, the Plaintiff's business opportunity (i.e., the option to purchase the Debtor's Home) does not fall within the purview of Section 523(a)(4).

**II. Section 523(a)(6)**

Section 523(a)(6) provides in relevant part, "(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt— . . . (6) for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). "[T]he word 'willful' indicates 'a deliberate or intentional *injury*, not merely a deliberate or intentional act that leads to injury.'" *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006) (quoting *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998)) (emphasis in *Geiger*). "The injury caused by the debtor must also be malicious, meaning 'wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will.'" *Id.* (quoting *Navistar Fin. Corp. v. Stelluti (In re Stelluti)*, 94 F.3d 84, 87 (2d Cir. 1996)). "Malice may be constructive or implied." *In re Stelluti*, 94 F.3d at 88.

"Conversion is an unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Peters Griffin Woodward, Inc. v. WCSC, Inc.*, 88 A.D.2d 883, 883, 452 N.Y.S.2d 599, 600 (N.Y. App. Div. 1982). "Under New York law, an action for conversion of money will lie where there is an obligation to return or otherwise treat in a particular manner the specific money in question." *Bd. of Trs. of the Sheet Metal Workers Int'l Ass'n v. Kern (In re Kern)*, 567 B.R. 17, 36 (Bankr. E.D.N.Y. 2017) (citations omitted). "[A]n act of conversion, if willful and malicious, is an injury to property

within . . . section 523(a)(6)." *Contini v. Cook (In re Cook)*, Case No. 07-31763, Ch. 7, Adv. Proc. No. 07-50072, 2009 Bankr. LEXIS 2646, at *14 (Bankr. N.D.N.Y. Apr. 7, 2009) (citation omitted).

"However, an action for conversion cannot be validly maintained where damages are merely being sought for breach of contract." *Peters Griffin Woodward, Inc.*, 88 A.D.2d at 884. "Courts in the Second Circuit regularly find that routine breach of contract matters are not ones for 'willful and malicious injury,' within the meaning of § 523(a)(6)." *Labbadia v. Martin (In re Martin)*, Case No. 18-31636, Ch. 7, Adv. Pro. No. 19-03001, 2019 LEXIS Bankr. 2415, at *34 (Bankr. D. Conn. Aug. 2, 2019) (collecting cases). "To hold that § 523(a)(6) is applicable to every failure to pay a debt . . . would essentially render meaningless the protections afforded a debtor by the Bankruptcy Code . . . ." *Orr v. Marcella (In re Marcella)*, 463 B.R. 212, 220 (Bankr. D. Conn. 2011). "[W]here a debtor's conduct has potential for economic gain or benefit, such as a knowing breach of contract, a creditor must sufficiently plead aggravating circumstances to satisfy § 523(a)(6)'s malice requirement." *Am. Honda Fin. Corp. v. Ippolito (In re Ippolito)*, Case No. 12-70632, Ch. 7, Adv. Pro. No. 12-8403, 2013 Bankr. LEXIS 866, at *23-24 (Bankr. E.D.N.Y. Mar. 6, 2013) (citations omitted and internal quotation marks omitted). "The determination of whether sufficient aggravating circumstances exist is made by looking to the totality of circumstances on a case-by-case basis." *Id.* at *24.

First, the Plaintiff's pleadings and the record are sparse with any facts that would satisfy the willful requirement pursuant to Section 523(a)(6). As previously stated, ordinary breaches of contract do not fall within the parameters of Section 523(a)(6). In fact, the State Court awarded judgment to Mountain Aire based on Cinney's breach of contract. *See* Apr. 23, 2019 State Court Decision, Ex. A, Plaintiff's Complaint, ECF No. 1 ("[Cinney] has defaulted in the performance

of an essential term of this contract."). However, "breach of contract is not a basis for non-dischargeability in section 523(a)(6) actions." *Rupert v. Krautheimer (In re Krautheimer)*, 210 B.R. 37, 53 (Bankr. S.D.N.Y. 1997) (citations omitted). Quite simply, nothing in the April 23, 2019 State Court decision substantiates Cinney's alleged intent to injure or purported malice towards the Plaintiff. *See id.* at 46 (reasoning that a bankruptcy court has the "broad ability and obligation to review all material in the record of relevance to the dischargeability of a debt").

Also, Mountain Aire voluntarily terminated the Option Agreement. Nov. 26, 2014 Amended State Court Decision and Order, Ex. A, ECF No. 16. While Cinney works as a seasonal truck driver, Tennent has held management roles with Mountain Aire and two other companies. Tr. 4:24-25; 5:1, ECF No. 41. As a sophisticated businessman, Tennent has completed "multiple large purchases" and "all kinds of development" backed with financing from a local doctor. Tr. 18:21-22, ECF No. 41; *see also* Tr. 45:22-25, 46:14-23, Nov. 5, 2018 State Court Trial Transcript, Ex. F, Plaintiff's Pretrial Statement, ECF No. 33. He understood or should have understood the terms and conditions of the business documents that he prepared and signed. In addition, Tennent neglected to review the Sale Contract and the Option Agreement with an attorney. Tr. 52:18-25, 54:3-14, 55:1-7, Nov. 5, 2018 State Court Trial Transcript, Ex. F, Plaintiff's Pretrial Statement, ECF No. 33. He bears at least some responsibility for his failure to mandate that Cinney hold the Funds in an escrow account. Given this wide gap of real estate experience between the parties, the Plaintiff's contention that Cinney outmaneuvered and pressured Tennent to terminate the Option Agreement is doubtful at best.

Second, no willful injury occurred because the Option Agreement placed no restriction on the Funds as analyzed prior. Although the Plaintiff relies on *Alessi v. Alessi (In re Alessi)*, 405 B.R. 65, 68 (Bankr. W.D.N.Y. 2009) for its contention that Cinney committed a willful

injury against the Plaintiff, the *Alessi* court found that a willful injury occurred when there was "a failure to pay from funds that the debtor had agreed specifically to earmark for that purpose." The Plaintiff's reliance on *Alessi* is misplaced because unlike the contract in *Alessi*, the Option Agreement, as indicated previously, did not have any provision that required the Debtor to earmark the Funds or put them into an escrow account. Moreover, Tennent acknowledged that the Option Agreement did not restrict how the Debtor handled the Funds. Tr. 21:9-11, ECF No. 41. He also knew that Cinney used the Funds to cover health and living expenses. Tr. 20:20-21, ECF No. 41.

Finally, Mountain Aire does not satisfy the malice requirement of Section 523(a)(6) because the Plaintiff fails to allege any "aggravating circumstance[s] evidencing conduct so reprehensible as to warrant denial of the fresh start" to the Debtor. *Novartis Corp. v. Luppino (In re Luppino)*, 221 B.R. 693, 700 (Bankr. S.D.N.Y. 1998) (internal quotation marks omitted). While the Court does not condone Debtor's betrayal of friendship and breach of contract, the Plaintiff did not show by a preponderance of the evidence that Cinney caused a willful and malicious injury to Mountain Aire. Based on the totality of the circumstances, the pleadings and record lack the requisite aggravating factors to render the Plaintiff's debt non-dischargeable.

## CONCLUSION

In sum, the Plaintiff's Section 523(a)(4) and Section 523(a)(6) causes of action fail because the Plaintiff did not carry its burden by a preponderance of the evidence. Therefore, the Court dismisses the Complaint in its entirety.

It is SO ORDERED.

Dated: August 16, 2021　　　　　　　　　　　/s/ Robert E. Littlefield, Jr.
　　　　Albany, New York　　　　　　　　　　Robert E. Littlefield, Jr.
　　　　　　　　　　　　　　　　　　　　　　United States Bankruptcy Judge